[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 17, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12078
Non-Argument Calendar

_____

D. C. Docket No. 05-00385-CR-T-17-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS JUAN LUJAN-DIAZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 17, 2007)**

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Carlos Juan Lujan-Diaz appeals his 135-month sentences for possession with

the intent to distribute five or more kilograms of cocaine while onboard a vessel and conspiracy to possess with the intent to distribute five or more kilograms of cocaine while onboard a vessel, in violation of 46 App. U.S.C. § 1903(a), (g), and (j); 18 U.S.C. § 2; and 21 U.S.C. § 960(b)(1)(B)(ii).  After review, we affirm Lujan-Diaz's sentences.

## I.  BACKGROUND

The United States Coast Guard ("USCG") spotted a "go fast" boat in international waters off the coast of Colombia.  The go fast boat engaged in evasive maneuvers while its crew threw bales of cocaine overboard.  The USCG shot and disabled the go fast boat's engines.  Upon boarding the go fast boat, the USCG found four crewmembers, including Lujan-Diaz, and a captain.  The USCG recovered eight bales of cocaine from the water.  Crew member Pedro Vallenzuella stated that the go fast boat had been carrying sixty bales of cocaine.  Based on the weight of the recovered cocaine bales and statements given by the crew, it was determined that the go fast boat was transporting approximately 1,500 kilograms of cocaine.  Lujan-Diaz admitted helping throw the cocaine bales into the water.

The presentence investigation report ("PSI") set Lujan-Diaz's base offense level at 38, pursuant to U.S.S.G. § 2D1.1(c)(1), based on the cocaine on the go-fast

boat being 150 kilograms or more.[1]  After a two level safety-valve reduction and a

three-level reduction for acceptance of responsibility, Lujan-Diaz's total offense

level was 33.  With a criminal history category of I, the PSI recommended an

advisory guidelines range of 135 to 168 months.

At sentencing, Lujan-Diaz argued that he was entitled to a minor-role

reduction.  The district court overruled Lujan-Diaz's objection and adopted the

guidelines calculations in the PSI.

Lujan-Diaz asked for a seven to nine year sentence.  In mitigation, Lujan-

Diaz stated that he had two young children and he wanted to ensure that they and

others in Colombia did not make the mistakes he had made.

The district court sentenced Lujan-Diaz to concurrent 135-month sentences.

In arriving at this sentence, the district court stated that it considered the advisory

guidelines range and the 18 U.S.C. § 3553(a) factors.  Lujan-Diaz filed this appeal.

## II.  DISCUSSION

On appeal, Lujan-Diaz argues that the district court erred by failing to grant

him a minor role reduction, pursuant to U.S.S.G. § 3B1.2.  We review for clear

error a district court's determination of a defendant's qualification for a role

reduction.  United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en

---

[1]Section 2D1.1(c)(1) provides for an offense level of 38 for 150 kilograms or more of cocaine.  There was no objection to the drug quantity calculation being more than 150 kilograms.

banc). The defendant has the burden of establishing his role in the offense by a preponderance of the evidence. Id. at 939. Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense. Id. at 940-45. When the relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable. Id. at 941.

The district court did not clearly err in refusing Lujan-Diaz a minor-role reduction. Under the first prong of De Varon, the district court held Lujan-Diaz accountable for only his own conduct, namely his involvement in the transporting of the 1,500 kilograms of cocaine, a substantial quantity of drugs. Under the second prong of De Varon, Lujan-Diaz was at least as culpable as his crewmates.

Contrary to Lujan-Diaz's contention, the district court did not operate under a mistaken belief that drug couriers were per se ineligible for a minor-role reduction. The district court considered whether a minor-role reduction was appropriate in Lujan-Diaz's case and determined that it was not.

Lujan-Diaz also argues that the district court erred in imposing an

4

unreasonable sentence, in light of the 18 U.S.C. § 3553(a) factors. Lujan-Diaz contends that his sentence is too severe given his lack of a criminal history and because he did not commit his crimes within the United States, but from Colombia, where large amounts of cocaine are readily available and half the population lives in poverty.

After United States v. Booker, a district court in determining a reasonable sentence, must consider the correctly calculated sentencing range under the Sentencing Guidelines and the factors in § 3553(a). See Booker, 543 U.S. 220, 258-64, 125 S. Ct. 738, 764-67 (2005); United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). We review the ultimate sentence imposed for unreasonableness in light of § 3553(a)'s factors and the reasons given by the district court. United States v. Williams, 435 F.3d 1350, 1354-55 (11th Cir. 2006). The party who challenges the sentence bears the burden of showing that it is unreasonable. Talley, 431 F.3d at 788. Although there is no presumption of reasonableness for a sentence within the advisory guidelines range, when the district court imposes a guidelines sentence, "we ordinarily will expect that choice to be a reasonable one." Id.

After review, Lujan-Diaz fails to show that his sentences are unreasonable. Lujan-Diaz's concurrent 135-month sentences were at the bottom of the advisory

guidelines range and only one year above the ten-year mandatory minimum for his crimes. See 21 U.S.C. § 960(b)(1)(B)(ii). Apart from the district court's refusal to give a minor-role reduction, Diaz does not dispute the district court's guidelines calculations. The district court considered Diaz's arguments in mitigation that he had two young children in Colombia to whom he wanted to return to ensure they did not follow in his footsteps. The district court also indicated that it had considered the § 3553(a) sentencing factors and believed that a sentence at the low-end of the advisory guidelines range was adequate and sufficient to meet the statutory purposes of sentencing.

Lujan-Diaz's argument that the guidelines were not designed to address the importation of drugs from other countries is without merit. Part D of the Sentencing Guidelines explicitly covers offenses involving the importation of drugs.

**AFFIRMED.**